KLECKNER, Appellant, vs. GREAT AMERICAN INDEMNITY COMPANY and another, Respondents.

MID-STATE SERVICE, INC., Respondent, vs. KLECKNER and another, Appellants: SHANKS and another, Respondents.

*October 3—November 8, 1950.*

For the appellants there was a brief by *Stafford & Stafford,* attorneys, and *Robert F. Pfiffner* of counsel, all of Chippewa Falls, and oral argument by *Mr. Pfiffner.*

For the respondents there was a brief by *Frank L. Morrow* of Eau Claire, for the Great American Indemnity Company and Kenneth T. Shanks, and *Emery & Woodside* of Marshfield, for the Mid-State Service, Inc., and oral argument by *Mr. Morrow* and *Mr. Robert E. Emery.*

GEHL, J. The accident happened on October 20, 1948. E. L. Kleckner was driving his car in a northerly direction on Highway 29, a concrete highway. He was going downgrade and intending to turn left into a side road extending west from Highway 29. He looked into his rear-view mirror and saw the tractor-trailer driven by Kenneth T. Shanks approaching at a distance of eight hundred to one thousand feet.

There is conflict in the testimony at this point, Kleckner contending that he commenced pulling over to his right, that he applied the brakes, continued down the road with the wheels two feet on the right shoulder until he was opposite the road leading to the west; that he slowed down, waiting for the tractor to pass on his left; that there was a crash, the tractor passing on his right, taking off the door; that the tractor went over the shoulder and into the ditch and commenced to burn.

Kenneth T. Shanks, the driver of the tractor-trailer testified that when he was about two hundred feet from Kleckner traveling at a speed of forty to forty-five miles per hour he observed that Kleckner's car made a gradual turn from its right side of the road toward the left or west side of the road; that he, Shanks, continued traveling in the same direction on his own right side of the road, while he slowly gained on Kleckner; that Kleckner got entirely over the center line and on the west side of the highway; that Shanks was traveling about twenty-five miles per hour and Kleckner about five miles per hour when Kleckner made a sharp turn back to his side of the road; that Shanks applied his brakes and swerved to the right to avoid the collision which occurred in the east lane of the highway at a point three feet west of the east edge of Highway 29 and at a point on the south side of the side road extended. The rear part of the left front fender and the left side and left duals of the Shanks vehicle collided with the right rear fender of the Kleckner car.

Kleckner contends that Shanks' testimony is so contrary to the physical facts as to make it incredible. He refers particularly to a photograph showing that his car was struck at its right rear and argues from that that Shanks' story that he, Kleckner, turned at a rather sharp angle into Shanks' path cannot be believed. The jury might well have inferred that Kleckner's car was so struck because at the time of the impact both vehicles, particularly Shanks' truck, were traveling in a northeasterly direction. The same must be said with respect to Kleckner's contentions with respect to the absence of skid marks left by his car, that such absence discredits Shanks' story that Kleckner after a right turn skidded into the tractor-trailer. The absence of skid marks does not compel the inference that Kleckner did not make the right turn. .. .. , .

The probative value of the testimony of witnesses is not destroyed by physical facts unless the physical facts are irrefutably established and permit of only one deduction.

"So frequently do unlooked-for results attend the meeting of interacting forces that courts should not indulge in arbitrary deductions from physical law and fact except where they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other." 20 Am. Jur., Evidence, p. 1034, sec. 1183.

". . . this court has heretofore had occasion to remark, in *Glatz v. Kroeger Bros. Co.* 168 Wis. 635, 170 N. W. 934, that when two automobiles come together on the highway a lot of surprising consequences flow, and an attempt to estimate the results of the forces involved, in such a way as to give a single interpretation to the physical facts, is always difficult and frequently impossible." *Standard Accident Ins. Co. v. Runquist,* 209 Wis. 97, 101, 244 N. W. 757. See also *Salchert v. Reinig,* 135 Wis. 194, 115 N. W. 132.

The physical facts in this case are not such as to require or permit us to say that the jury was not warranted in believing the story told by Shanks.

Kleckner contends that Shanks should have been found guilty of causal negligence as a matter of law. He bases this contention principally upon the fact that, when Shanks observed the manner in which Kleckner was driving, Shanks should have blown his horn and applied his brakes sooner than he did. According to Shanks' story he saw nothing unusual in the conduct of Kleckner until the latter, after he started turning left to enter the town road, turned again, this time to his right and into the path of Shanks. If his story is believed, as it apparently was, there was no occasion for Shanks to act sooner. Having observed Kleckner turning to his left apparently to enter the town road he was justified in assuming that he would continue on to the west and permit Shanks to go forward without danger. Whether under the circumstances Shanks should have sounded his horn was for the jury.

Sec. 85.16 (1), Stats., which requires an operator of a motor vehicle to give warning when overtaking or attempting to pass another vehicle, cited by Kleckner, is not applicable, nor are the cases relied upon by him, *Suren v. Zuege,* 186 Wis. 264, 201 N. W. 722; *Kerlinske v. Etzel,* 194 Wis. 36, 215 N. W. 591. Shanks was not attempting to pass Kleckner. The court properly submitted the issue as to the negligence of Shanks to the jury.

*By the Court.*—Judgments affirmed.