MILWAUKEE AUTOMOBILE MUTUAL INSURANCE COMPANY, Appellant, vs. FARMERS MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.

*October 11—November 5, 1957.*

For the appellant there was a brief by *Hale, Skemp, Hanson & Schnurrer* of La Crosse, and oral argument by *T. H. Skemp.*

For the respondent there was a brief by *Ingolf E. Rasmus* and *James B. Halferty,* both of Chippewa Falls, and oral argument by *Mr. Halferty.*

STEINLE, J.   It is the position of the plaintiff that the trial court erred in denying its motion for a directed verdict. With respect to such position it is contended (a) that the physical facts rendered incredible the testimony of Theresa Peters as to events occurring before, at, and after the collision; that the plaintiff's evidence conclusively established that Theresa Peters was negligent and that Robert Baughman was not negligent; that since no jury issue was created by the evidence, the plaintiff was entitled as a matter of law to a finding that Theresa Peters was negligent, and that Robert Baughman was free from negligence; (b) that the only competent evidence of record regarding damages to the Baughman automobile was that presented by the plaintiff which established an amount of $841.86 and not $657.82 as found by the jury; that the court was bound to determine as a matter of law that the damages amounted to $841.86.

The collision occurred in the afternoon of the day following Thanksgiving on an east-west stretch of State Trunk Highway 53 about one and one-half miles east of Whitehall. Theresa Peters was en route to her home at Chippewa Falls from La Crosse where she had visited on Thanksgiving Day. Her car was traveling in an easterly direction. Robert Baughman, who lives about one-half mile east of the place

of collision, was proceeding in a westerly direction toward Whitehall. There is a bridge approximately 100 feet in length in the vicinity of the place of the collision. Mrs. Peters testified that the collision took place at a point about 30 to 60 feet east of the east terminus of the bridge. Baughman maintained that the collision took place on the bridge, near its east end.

It is the rule that where human testimony is in direct conflict with established physical facts and common knowledge, it is incredible and will not support the verdict of the jury. *Strnad v. Co-operative Insurance Mutual* (1949), 256 Wis. 261, 40 N. W. (2d) 552. However, such rule applies only when the physical facts are irrefutably established and permit of but one inference. As said by Mr. Justice GEHL, speaking for the court, in *Kleckner v. Great American Indemnity Co.* (1950), 257 Wis. 574, 577, 44 N. W. (2d) 560:

"The probative value of the testimony of witnesses is not destroyed by physical facts unless the physical facts are irrefutably established and permit of only one deduction.

" 'So frequently do unlooked-for results attend the meeting of interacting forces that courts should not indulge in arbitrary deductions from physical law and fact except where they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other.' 20 Am. Jur., Evidence, p. 1034, sec. 1183.

" '. . . this court has heretofore had occasion to remark, in *Glatz v. Kroeger Bros. Co.* 168 Wis. 635, 170 N. W. 934, that when two automobiles come together on the highway a lot of surprising consequences flow, and an attempt to estimate the results of the forces involved, in such a way as to give a single interpretation to the physical facts, is always difficult and frequently impossible.' *Standard Accident Ins. Co. v. Runquist,* 209 Wis. 97, 101, 244 N. W. 757. See also *Salchert v. Reinig,* 135 Wis. 194, 115 N. W. 132." See also *Koniecko v. Huffman* (1953), 265 Wis. 79, 84, 60 N. W. (2d) 729, 61 N. W. (2d) 880.

The defendant submits that the physical facts have not been irrefutably established, and that were the physical facts established as claimed by the plaintiff, they would permit of more than one inference. The defendant also maintains that the testimony of Mrs. Peters is credible and supports the jury's findings as to Baughman's negligence.

The physical facts upon which plaintiff's contention is based include tire marks, debris on the highway, and the position of the respective automobiles at the time of and after the collision.

The plaintiff presented evidence which indicated that Mrs. Peters invaded Baughman's (north)· lane of the highway immediately before the collision, and the defendant presented evidence indicating that Baughman invaded Mrs. Peters' (south) lane at that time. Several witnesses testified that snow existed on the highway at the time of the collision. However, Mrs. Peters testified that while ice was present on the highway, there was no accumulation of snow there, although there were some snow flurries at the time. Baughman testified that after the collision his car was stopped on the north lane of the bridge, and that he observed tracks on his side of the highway leading to his car from an easterly direction. He testified that he did not remember whether there had been traffic in his lane ahead of him. He stated that he observed the tire marks of the Peters car on his side of the highway. A witness, David Bautch, testified that he had been driving his car in an easterly direction ahead of the Peters car, and that when intending to turn at a point about 250 feet east of the site of the collision, he looked back and saw the cars collide. At that time he saw a car between his car and those involved in the collision. He testified further that after the collision he observed tire marks on the north side of the road leading to Baughman's car which was stopped on the bridge. Another witness, Hans Klumby, who

accompanied Sheriff Ernest Axness to the scene of the accident, testified to the presence of tire marks leading for a distance of 75 to 80 feet on the north side of the highway to the Baughman car. He also testified that he observed tracks of the Peters car, and when checking the same, observed that they lead back on the north side of the highway for a distance of 500 feet to a point from where the car had crossed from the south side to the north side of the highway. He also testified to the presence of "sluing" marks which to him indicated that the Peters car had skidded counterclockwise. In cross-examination Mr. Klumby stated that as the sheriff's car traveled from Whitehall to the scene of the accident, it stayed on tracks made by eastbound traffic, and that there was a track on the other side made by westbound traffic.

Mrs. Peters had been taken to Whitehall before Mr. Klumby and the sheriff arrived at the scene of the collision. The sheriff testified that he observed tire marks of the Baughman car for a distance of 30 to 40 feet behind it on the north side of the highway, the track farthest north having been located on the shoulder. It appears from the testimony of the sheriff that although he had prepared a diagram, he did not indicate tire marks thereon because "we weren't too sure of the tracks, and that would be an assumption." Robert Baughman testified that other cars traveled on the highway after the collision and before the sheriff arrived. Mrs. Peters testified that the road was icy and that the icy condition left no tracks on the highway at all—that she could see no tracks of either her own car or that of Baughman. She also testified that fifteen minutes elapsed after the accident before anyone appeared at the scene. No photographs were submitted in evidence which showed the presence of tire marks. In *Strnad v. Co-operative Insurance Mutual, supra,* wherein it was determined that the physical facts rendered the witness' testimony incredible, the photograph clearly indicated the presence of the tire marks there

in question. In the case at bar there are conflicting inferences which may be drawn from the testimony with reference to the presence of tire marks, and it cannot be held that the physical evidence relating to tire marks was irrefutably established. The issue was for the jury.

With reference to the presence of debris under Baughman's car in the north lane of traffic, Mrs. Peters testified that Baughman invaded her lane and after the collision Baughman moved some pieces of his car from her lane and piled them in front of his own car. In cross-examination of Baughman he at first denied moving any pieces to the vicinity of his car from the south side of the road, but later conceded that in adverse examination he had admitted picking up pieces from the center of the highway and placing them in front of his car. The sheriff testified to the presence of debris consisting of a sprinkling of dirt accumulations which appears "on the north lane, starting directly back of the Baughman car and extending to the front of it." Mr. Klumby testified to an observation of debris on the north side of the highway, and to the presence of glass and dirt underneath the Baughman car. Mrs. Peters testified that her car was turned to its left, or counterclockwise. Had her car taken such course, then it may be inferred that the debris could have dropped from her car onto the north side of the highway while it was turning in that area after the impact. Since there was an issue as to whether the Peters car was projected from the south lane into the north lane and back into the south lane as a result of the impact, it cannot be held that the presence of the debris in the vicinity of the Baughman car constituted an irrefutably physical fact that the debris had fallen from the Baughman car, and that Mrs. Peters' testimony as a consequence was to be rendered incredible.

We next consider plaintiff's contention with respect to the position of the cars at the time of the collision. Robert Baughman testified that the collision occurred on the bridge.

Mrs. Peters testified that it took place 30 to 60 feet east of the bridge, and that because of the force of the impact her own car was projected onto the bridge. She testified that the Baughman car came to rest on the north shoulder of the highway just east of the bridge.

Several of plaintiff's witnesses testified that the Baughman car was stopped on the bridge after the collision. There was a crease mark on the right side of the Baughman car as illustrated by a photograph in evidence. The mark was located at a height identical with that of a curb on the bridge. The defendant points out that the photograph indicating the mark on the car was not taken until April of the following year. The Baughman car was heavier in weight than the Peters car. The front ends of both cars were damaged.

While the position of the Baughman car when stopped may have been on the bridge, it is not inconceivable that it moved to such place on the slippery highway after the impact. The mark on the side of the Baughman car may have resulted from contact with the bridge in the collision, or while the car was moving against the curb after an impact which occurred east of the bridge, or while the Baughman car was being towed away, or while it was stored before the photograph was taken. The credibility and weight of the evidence were for the jury. It cannot be held that the physical facts as claimed permitted only the deduction that the collision took place on the bridge, specifically on the north side thereof. It was the jury's duty to weigh any physical facts found by it to exist as against other evidence in the case relating to the issue as to whether Mrs. Peters had invaded Mr. Baughman's lane of travel immediately before the collision and was negligent in regard thereto, or whether Baughman had negligently crossed into Mrs. Peters' lane before the collision. We are unable to conclude that with reference to this consideration the physical facts were ir-

refutably established so as to render Mrs. Peters' testimony incredible.

The sheriff testified that the Baughman car was stopped on the north side of the highway facing in a westerly direction, and that about three fourths of its length was on the bridge. Its right side was near and parallel to the concrete curbing on the north side of the bridge. The Peters car was on the south side of the highway facing in a westerly direction. Its 'entire length was on the bridge and the distance from the right rear of the Peters car to the left front of the Baughman car was 17 feet. It is the contention of the plaintiff that when the Peters car struck the Baughman car, it pushed it against the north curb on the bridge, the impetus causing the Peters car to turn toward the west in a counterclockwise motion before it came to rest on the south side of the road. The defendant contends that reasonable consideration of the position of the cars when they came to rest does not exclude the probability that Baughman's car was entirely in Mrs. Peters' lane on the south side of the highway just before the impact, and that Baughman was turning to his right in an effort to get back on his own side when the collision took place, or that both cars were straddling the center of the highway when the collision occurred. Since the physical facts with reference to the position of the cars after they had stopped moving permitted of more than one inference as to what had occurred, this issue was for the jury.

The physical facts with reference to tire marks, debris, and position on the highway at the time of the impact are in dispute. The physical facts with reference to the position of the cars after they had come to rest permitted of more than one inference as to how they reached that position. Since there is credible evidence of record to support the findings of the jury, the judgment must be affirmed. The court correctly ordered that the complaint be dismissed. In view

of these conclusions, it is not necessary that the issue regarding the amount of property damage sustained by Mr. Baughman to his automobile, be determined. In its motions after verdict the plaintiff did not challenge the jury's findings that the amount allowed by the defendant to Charlene Baughman was reasonable. The judgment properly provided that there be contribution by the plaintiff to the defendant with regard to that item.

*By the Court.*—Judgment affirmed.