SEEFLUTH, Respondent, v. HERMAN MUTUAL INSURANCE COMPANY and another, Appellants.

*December 1, 1960—January 10, 1961.*

320

For the appellants there was a brief by *Brazeau, Brazeau & Cole* of Wisconsin Rapids, and oral argument by *Richard S. Brazeau.*

For the respondent there was a brief by *Crowns, Crowns & Merklein* of Wisconsin Rapids, and oral argument by *Byron C. Crowns* and *Robert J. Merklein.*

BROADFOOT, J.   The issues involved upon this appeal as stated by the appellants are as follows:

"1. Is the testimony of a witness, although not directly controverted, which is opposed to the unquestioned laws of nature of any probative value?

"2. Assuming the defendant, C. Joe Morzinski, was negligent in the manner in which he parked his truck or negligent in the manner in which the same was illuminated was such negligence a proximate cause of the plaintiff's injuries?"

Under the provisions of sec. 346.54 (1) (d), Stats., Morzinski's truck should have been parked with the right wheels within 12 inches of the curb. He testified that he had so parked his truck. His father was riding in the truck with him and he, too, testified that the truck was parked with the right wheels within 12 inches of the curb. A police officer arrived at the scene of the accident shortly after it occurred. The truck had been moved before the officer arrived. According to Morzinski the accident happened near a street intersection and his truck had been pushed forward into the intersection and he moved it so that it would not block traffic. The officer testified that he measured the distance from the curb to the right rear of the Seefluth car and found that distance to be eight feet, two inches. He further testified that the car stood parallel to the curb. Seefluth testified that he was driving at about that distance from the west curb at the time of the accident.

Morzinski called as an expert witness an engineering professor from the University of Wisconsin. In answer to a hypothetical question the expert witness testified that under the rules of physics the result of such a collision would be to cause the automobile to react in a certain manner. He testified that the rear of the car would skid in a clockwise manner and that after the accident the rear of the automobile would be farther from the curb than would the front end of the automobile.

The hypothetical question contained one statement that was in dispute. That statement was as follows: "That as a

result of said collision, said automobile bounced backward."
Nowhere in their brief do the appellants refer to testimony
that supports that statement. Nor can we find that state-
ment in the unduly long appendix, nor do the appellants call
our attention to any page in the record where there is any
such testimony. Our search of the record discloses the follow-
ing: The police officer concluded that both vehicles had moved
forward following the accident; Seefluth testified that the
truck moved forward a short distance but that the car came
to an immediate stop. The plaintiff testified as follows:

"*Q*. Now, as you recall, what happened to your car when
it struck this object? *A*. It stopped.

"*Q*. Did it move to its right or to its left? *A*. No.

"*Q*. Did it seem to stop or to bounce at the moment of the
impact? *A*. Well, it could have bounced, as I remember, it
went immediately dead."

In addition the expert witness testified that the extent to
which the two automobiles became engaged as a result of the
collision would affect the movement of the automobile. He
also testified that it was possible for the car to bounce
straight back although it was not probable. Later, upon
redirect examination, he stated that it would be highly im-
probable.

Both the police officer and the expert witness computed that
if the car was eight feet, two inches from the curb and stand-
ing parallel to it, and if the area of contact was the right two
feet of the automobile and the left two feet of the truck, and if
the platform was 95 inches wide, then the truck was parked
27 inches from the curb. This computation would place the
right-hand side of the platform that distance from the curb,
while the statute refers to the right wheels. The platform
extended beyond the wheels, although the exact distance is
not given in the record.

The appellants contend that the testimony of their expert
witness makes the testimony of the police officer as to the

distance between the right side of the automobile and the west curb incredible and of no probative value. In addition, they contend that no person, on a dark, damp night, could tell with any degree of accuracy that a line almost 20 feet long (the presumed length of the Seefluth car) could be exactly parallel to another line (the west curb line) more than eight feet away. They contend that a few inches in error would be of great materiality.

The appellants further contend that Seefluth was an interested party and that his testimony should have no significance, both because of his monetary interest and because he was excited and busy caring for his injured wife immediately after the collision. The last argument goes to the weight to be given to his testimony, which was a matter for the jury. In passing upon the weight to be given to the testimony of the expert witness, the jury could also consider that his opinion may have been based upon a false assumption, *i.e.*, that the automobile bounced back after the collision. The jury heard the witnesses and knew what the testimony was.

Upon appeal we review the record to determine if there is credible evidence to support jury findings. We find there is ample evidence to support the finding that Morzinski's truck was parked with its right wheels more than 12 inches from the curb. The jury might have believed the expert witness but was not compelled to do so. Upon review we apply a rule which has been announced many times by this court and which is as follows:

"It is the rule that where human testimony is in direct conflict with established physical facts and common knowledge, it is incredible and will not support the verdict of the jury. *Strnad v. Co-operative Insurance Mutual* (1949), 256 Wis. 261, 40 N. W. (2d) 552. However, such rule applies only when the physical facts are irrefutably established and permit of but one inference." *Milwaukee Automobile Mut. Ins. Co. v. Farmers Mut. Automobile Ins. Co.* (1957), 2

Wis. (2d) 205, 208, 85 N. W. (2d) 799. See also *Kleckner v. Great American Indemnity Co.* (1950), 257 Wis. 574, 577, 44 N. W. (2d) 560.

Under the provisions of sec. 347.27, Stats., certain lighted lamps must be displayed upon vehicles that are unlawfully parked even within city limits. There is no contention that the Morzinski truck was so lighted just prior to the accident. Since the jury could find from the record that the truck was unlawfully parked and the testimony of the expert witness and known laws of physics do not irrefutably establish that the testimony upon which such finding was based is incredible, the findings of negligence as to Morzinski must be sustained.

Upon the second issue the appellants contend that in a portion of Seefluth's testimony he stated that he was blinded by the lights of a cab parked across the street and could not have seen the truck. Therefore they contend that the accident would have happened even though the truck had been properly parked and even assuming that Morzinski was negligent, such negligence was not causal.

Seefluth's testimony varied and at another point in his testimony he stated that he could have seen the lights of the truck had they been on. At another point he gave as his reason for not seeing the truck that it was not lighted. Since there were contradictory statements, the jury had the duty to reconcile his conflicting statements in view of the other testimony in the record and in view of all of the circumstances. We have no hesitancy in saying that the record supports the jury finding that the negligence of Morzinski was causal.

*By the Court.*—Judgment affirmed.